# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

      Plaintiff,

  v.

MATTHEW THOMAS ONOFRIO,

      Defendant.

  and,

MIDCOUNTRY BANK,

      Petitioner.

Crim. No. 22-cr-322 (SRN/TNL)

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PETITION OF MIDCOUNTRY BANK**

Plaintiff, the United States of America, respectfully submits this Memorandum in Support of its Motion to Dismiss the Petition filed by MidCountry Bank ("MidCountry" or "Bank") asserting an interest in $4,744,410 of the funds included in the Preliminary Order of Forfeiture issued against the Defendant.

## INTRODUCTION

As is set forth below, third parties must file a petition asserting an interest in property subject to forfeiture within 30 days of their receipt of notice of the forfeiture. Under Eighth Circuit precedent, actual notice of the forfeiture order by a third party commences that party's 30-day deadline, and a petitioner with actual notice of a Preliminary Order of Forfeiture cannot rely upon a lack of direct written notice to avoid a finding of untimeliness. *United States v. Puig*, 419 F.3d 700, 703-04 (8th Cir. 2005).

MidCountry admits it had actual knowledge of the Preliminary Order of Forfeiture by August 17, 2024. Although it moved for an extension of its petition filing deadline, that motion was denied on October 23, 2024. At that point, the latest petition deadline that could possibly apply is 30 days after that order was issued: November 22, 2024. Because the Bank's Petition was filed after that deadline passed, its petition should be dismissed for failure to comply with the requirements of 21 U.S.C. § 853(n).[1]

## **FACTUAL BACKGROUND**

The factual background of this matter is set forth in detail in the Government's Response in Opposition to Motion to Extend Time to File Petition. ECF No. 52. pp 2-5. Rather than repeating that response, the Government submits the following timeline of the events most relevant to this motion.

**August 5, 2022**

Government seizes $35,745,252.97 of proceeds of this fraud scheme from a bank account controlled by Onofrio's company, Northwoods Management LLC. *See, e.g.,* ECF No. 53 ¶ 4.

**November 17, 2022**

Indictment returned against Onofrio includes forfeiture allegations. ECF No. 1

**July 10, 2023**

Onofrio pleads guilty to Count 1 of the Indictment and admits that the seized $35,745,252.97 is subject to forfeiture as proceeds of his fraud scheme regardless of the loss amount determined at sentencing. ECF No. 27 ¶¶ 1, 12.

---

[1] As the Government has previously stated, dismissal of MidCountry's Petition would not impact its status as a victim with respect to restitution, including the potential payment of forfeited funds to the Bank through the Department of Justice's restoration process. *See* ECF No. 52 at 14-16.

**August 16, 2023**

Preliminary Order of Forfeiture ("POF") is issued for $35,745,252.97 seized from Onofrio/Northwoods Motion. ECF No. 30.

**August 22, 2023-September 20, 2023**

Government publication of POF. 30 days after last date of publication is October 20, 2023. *See* ECF No. 31.

**January 2024**

MidCountry submits victim impact statement. Baune Decl. ¶ 5.

**August 17, 2024**

MidCountry's current attorney "discovered" the preliminary order of forfeiture." *See* ECF No. 50 ¶ 10.

**September 5, 2024**

Conference call in which MidCountry seeks extension of deadline to file a petition asserting an interest in approximately $15 million of funds included in the POF. *Id.*

**September 12, 2024**

Government formally rejects request to extend deadline. *Id.*

**October 2, 2024**

MidCountry files Motion to Extend Time to File Petition. ECF Nos. 48-50.

**October 21, 2024**

Government files response in opposition. Its response asserts, among other things, that a "a claimant whose counsel had actual notice of the order of forfeiture cannot complain that the Government should have sent him direct notice." ECF No. 52 at 9-10.

**October 23, 2024**

District Court denies MidCountry's motion without prejudice to its right to file a petition. ECF No. 54.

**December 6, 2024** (44 days later)

MidCountry files its Petition asserting an interest in approximately $4.7 million of the funds included in the POF. ECF No. 55

**ARGUMENT**

I.   **THE PURPOSE OF THE ANCILLARY PROCEEDING**

Section 853 of Title 21 governs criminal forfeiture of property in criminal cases. "A criminal judgment of conviction that includes a forfeiture count conclusively determines the property rights as between the government and the criminal defendant, but the government does not receive clear title to the forfeited property as against the rest of the world until the government complies with the requirements of § 853(n)." *Puig*, 419 F.3d at 703. The "ancillary proceeding is the only avenue by which a third-party claimant may seek to assert an interest in property that has been included in an indictment alleging that the property is subject to forfeiture." *Id.*; *see also United States v. Moser*, 586 F.3d 1089, 1092 (8th Cir. 2009).

Section 853(n) and the Federal Rules of Criminal Procedure articulate the procedures by which third parties may assert their interest in forfeited property. "When a third party files a petition claiming a superior interest in property subject to a criminal forfeiture order, the petition commences an ancillary proceeding that incorporates certain procedures prescribed by the Federal Rules of Civil Procedure, such as discovery and motions to dismiss or to grant summary judgment." *United States v. Mills*, 18 F.4th 573, 576 (8th Cir. 2021) (also noting, "in the ancillary proceeding, the government exercised its discovery rights under Criminal Rule 32.2(c)(1)(B), requesting admissions and the production of documents that would substantiate the [petitioner's] ownership claims"). The petitioning third party may not relitigate the underlying forfeiture order against the criminal defendant but must instead prove

superior ownership under § 853(n)(6). *Id.* at 576.

Third-party petitions in the ancillary proceeding are governed by 21 U.S.C. § 853(n), which sets forth two narrow grounds for relief. *United States v. Timley*, 507 F.3d 1125, 1130 (8th Cir. 2007). A petitioner must "either demonstrate priority of ownership at the time of the offense . . ., or that [she] subsequently acquired the property as a bona fide purchaser for value" without notice that the asset is subject to forfeiture. *Id.*; 21 U.S.C. § 853(n)(6). A petitioner has the burden of establishing all elements of her claim, including standing. *Id.* A third party "cannot prevail . . . unless [she] qualifies for relief under one of the two prongs of § 853(n)(6)." *United States v. White*, 675 F.3d 1073, 1081 (8th Cir. 2012). Challenges to the validity of forfeiture orders are impermissible in ancillary proceedings. *Id.* at 1077-1078.

## II.    THE GOVERNMENT'S RIGHT TO MOVE TO DISMISS

"Federal Rule of Criminal Procedure 32.2(c)(1)(A) authorizes the dismissal of a forfeiture petition 'for lack of standing, for failure to state a claim, or for any other lawful reason.'" *White,* 675 F.3d at 1077; *see also United States v. Petters,* 857 F.Supp.2d 841, 844 (D. Minn. 2012).

The legal standard for a motion to dismiss in the ancillary proceeding is effectively the same as under Federal Rule of Civil Procedure 12(b): the Court should dismiss the petition if, assuming all allegations in the petition are true, no relief could be granted as a matter of law. *See, United States v. Grossman*, 501 F.3d 846, 848 (7th Cir. 2007). "'If a third party fails to allege in its petition all elements necessary for recovery,

including those related to standing, the court may dismiss the petition without providing a hearing.'" *White*, 675 F.3d at 1077 (emphasis added) (quoting *United States v. BCCI Holdings (Luxembourg) S.A. (Petitions of General Creditors)*, 919 F.Supp. 31, 36 (D.D.C. 1996); *United States v. Sigillito*, 938 F.Supp.2d 877, 884 (E.D. Mo. 2013) ("The court need not hold a hearing on a petition if it is clear that the petitioner could not prevail even if [a hearing] were granted.") *aff'd* 759 F.3d 913 (8th Cir. 2014). "For purposes of the motion, the facts set forth in the petition are assumed to be true." Fed. R. Crim. P. 32.2(c)(1)(A). "The Court, however, is not required to accept any legal conclusions included in the petition." *Sigillito,* 938 F.Supp.2d at 883 (internal citations omitted).

## II. MIDCOUNTRY'S PETITION SHOULD BE DISMISSED AS UNTIMELY.

### A. Untimely Petitions Are Subject to Dismissal.

Strict timing requirements apply to petitions in an ancillary proceeding. That deadline is set forth in 21 U.S.C. 853(n)(2), which states:

> Any person . . . asserting a legal interest in property which has been ordered forfeited to the United States . . . may, within thirty days of the final publication of this notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property.

Section 853(n)(2) creates a 30-day window for third parties to file claims; claims not filed within that window must be dismissed as untimely. *United States v. Marion*, 562 F.3d 1330, 1339-40 (11th Cir. 2009). "Courts have routinely held that the deadline in section 853(n)(2) is mandatory." *United States v. Lamid*, 663 F. App'x 319, 325 (5th

Cir. 2016); (citing *United States v. Sharma*, 509 F. App'x. 381, 382 (5th Cir. 2013) ("[a] third party who files an untimely petition loses his right to assert any interest in the property"); *United States v. Alvarez*, 710 F.3d 565, 567–68 (5th Cir. 2013) (disallowing claim by minor child filed 74 days after service of the preliminary order of forfeiture); *Grossman*, 501 F.3d at 848–49 (affirming dismissal of claim filed by lienholder five months after it received notice, holding, "If the third party does not file its claim within the thirty days, 'the United States shall have clear title to property that is subject to the order of forfeiture.'"); *United States v. Negron–Torres*, 876 F.Supp.2d 1301, 1305 (M.D. Fla. 2012) (finding that pro se claimant's petition, which was filed thirty-seven days after she received notice of the forfeiture, was untimely); *United States v. Sayegh*, 2018 WL 3819128, *3 (D. Ariz. Aug. 10, 2018) (dismissal of an untimely third party claim is mandatory; following *Marion* and collecting cases); *see also United States v. Sze*, 2024 WL 195468, *12 (D.N.J. Jan. 18, 2024) (declining to allow claimants to amend claim to allege elements of a constructive trust outside 30-day time limit.).

When a petition is untimely filed and a petitioner cannot demonstrate compliance with 21 U.S.C. § 853(n)(2), a pre-discovery Rule 12 dismissal motion is usually "the better practice" for addressing timeliness issues. *Marion,* 562 F.3d at 1342.

### B.   MidCountry's 30-day Deadline Commenced When it Received Actual Notice of the Preliminary Order of Forfeiture.

As is set forth above, a third party seeking to assert a claim in property included in a preliminary order of forfeiture must file a claim "within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier."

21 U.S.C. § 853(n)(2). The government is also required to attempt to send notice to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture in an ancillary proceeding. Fed. R. Crim. P. 32.2(b)(6)(A). The 30-day deadline for third parties who are entitled to receive notice of the forfeiture is typically deemed to commence when that party receives actual notice of the forfeiture.

The Eighth Circuit addressed this issue in *United States v. Puig,* 419 F.3d 700, 703-04 (8th Cir. 2005), in which it held that the deadline to file a petition for a potential claimant who did not receive written notice from the government runs from the date they received actual notice. More specifically, in *Puig,* a Preliminary Order of Forfeiture was entered on December 30, 2002. *Id.* at 702-03. That order included a motorcycle that a third party, Hance, claimed to legally own. The government published the order, with a last date of publication on January 31, 2003, and it served notice of the order on the defendant's lawyer. The Final Order of Forfeiture was filed on March 31, 2003 and served on the defendant's lawyer the same day. Hance first attempted to contest the forfeiture by sending a letter to the United States through his attorney on March 12, 2003 and again on April 4, 2003.[2] The government responded on May 13, 2003 that it believed the motorcycle was properly forfeited. Hance filed a petition on July 7, 2003, which was dismissed as untimely.

---

[2] Hance's attorney was also the lawyer for the defendant in that case. The Eighth Circuit deemed that attorney to have commenced his representation of Hance on March 12, 2003, when he sent the letter to the government on Hance's behalf.

On appeal, the Circuit Court addressed Hance's argument that his failure to file a timely petition could be excused because the government failed to provide him written notice of its intent to forfeit the property. The Court, assuming that Hance "was entitled to particularized notice," held that he received actual notice sometime before March 12, 2003, when his attorney first wrote to the government on his behalf. *Id.* at 703-4. He also knew that the government had no intention of returning the motorcycle on May 13, 2003, yet filed no petition until July 7, 2003. The Court held, "even if we give Hance the greatest leeway possible, the time for filing a petition started to run at the very latest upon receipt of the letter of May 13, 2003." *Id* at 704. As a result, it affirmed the district court's dismissal of the petition as untimely and held that the failure to file a timely petition was not excusable neglect. *Id.*

*Puig* requires dismissal here. MidCountry admits that it had actual notice of the POF by, at the very latest, August 17, 2024, when its current attorney acknowledges having discovered the POF. ECF No. 50 ¶ 10.[3] By September 12, 2024, the Bank knew that the government would not agree to extend its petition deadline. *Id.* MidCountry subsequently filed a motion seeking to extend its deadline to file a petition (no petition was attached to the motion), which was denied on October 23, 2024. ECF No. 54. That Order held that no Court authorization was required for the Bank to file a petition. Nevertheless, MidCountry waited 44 more days, until December 6, 2024, to file its Petition.

---

[3] It is possible that the Bank had knowledge of the POF earlier, but discovery would be necessary before such a determination could be made.

By October 23, 2024, therefore, the Bank had received actual notice more than three months earlier, knew the government would not extend its deadline, and had received an Order from the Court holding that no Court order was required for it to file a Petition. As in *Puig,* therefore, even if the Bank were given "the greatest leeway possible," its Petition would still be too late.

*Puig's* holding that a potential claimant's 30-day deadline is triggered by its actual knowledge is not unique. For example, in *United States v. Tucker,* the court dismissed the petition filed by the defendant's pro se ex-wife. 2020 WL 6891517 at *4-6 (S.D.N.Y. Nov. 24, 2020). The court accepted that the claimant had not received the written notice the government sent to a P.O. Box or seen the published forfeiture notice, but there was evidence that she had actual notice of the forfeiture order more than 30 days before she filed a claim when she discussed the forfeiture order with her ex-husband's attorney. As a result, her petition was dismissed as untimely and she could not demonstrate that her late filing of a petition was excusable neglect. *Id.; see also United States v. Crew*, 704 F. App'x 30, 31-32 (2d Cir. 2017) (regardless of whether third party was entitled to written notice, "and in itself determinative, Toppin does not dispute that his counsel actually received the preliminary order of forfeiture in connection with another property subject to forfeiture . . . Toppin failed to file a petition . . . within 30 days of the final publication of notice or his receipt of notice, or in fact ever").

**C.    The Banks' Late Filing Cannot be Saved by Excusable Neglect.**

As is set forth above, the Court in *Puig* considered whether excusable neglect applied to a late-filed petition. That standard applied in *Puig* because the claimant sought to reopen a judgment pursuant to Rule 60. If that standard were imputed here, it would not salvage the late Petition for the same reasons dismissal was proper in *Puig.*

MidCountry had actual knowledge of the POF and received an order holding that it needed no prior authorization to file its Petition, but it nevertheless waited more than 30 days after all of these events before filing it. Moreover, the Government had warned that receipt of actual notice triggered the 30-day deadline in its Response in Opposition to MidCountry's Motion to Extend Time to File Petition. ECF No. 52 at 9-10 ("The Eighth Circuit has held that a claimant whose counsel had actual notice of the order of forfeiture cannot complain that the Government should have sent him direct notice. *Puig,* 419 F.3d at 704. As a result, MidCountry's petition may be late if its previous counsel knew that a Preliminary Order of Forfeiture had been issued.")[4]

Whatever arguments the Bank may have used to defend its decision to wait more than 30 days after August 17, 2024 to file its Petition evaporated with the issuance of the Order denying its Motion to Extend Time to File Petition. At that time, the Bank had actual knowledge of the POF and knew that it could file a Petition

---

[4] That briefing was addressing the impact of the factual question of whether MidCountry had received actual notice of the forfeiture order prior to August 17, 2024. Discovery would be needed to determine whether the Bank had such notice, and the Government reserves its right to seek judgment on that basis if necessary. But such discovery is unnecessary for this Motion because there is evidence in the record establishing each of the relevant dates.

11

without further order of the Court. Even assuming, therefore, that the delay preceding the October 23, 2024 Order were deemed excusable, MidCountry still let the 30-day deadline after that date expire before filing a petition.

As a result, even if the Bank here is given "the greatest leeway possible," it could not establish that its failure to file its Petition within 30 days after October 23, 2024 was excusable neglect. The Petition, therefore, does not meet the requirements of 21 U.S.C. § 853(n)(2) and must be dismissed.

## CONCLUSION

For the reasons state above, the United States respectfully requests that the Petition filed by MidCountry pursuant to 21 U.S.C. § 853(n)(2) be dismissed.

Respectfully submitted,

Dated: 12/30/2024

ANDREW M. LUGER
United States Attorney

 s/Craig Baune
BY:  CRAIG R. BAUNE
Assistant U.S. Attorney
Attorney ID No. 331727
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415
Phone:  612-664-5600
Craig.baune@usdoj.gov