UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Matthew Thomas Onofrio,<br><br>Defendant. | Case No. 22-cr-322 (SRN/TNL)<br><br>**ORDER** |

Michael E. Obermueller, Winthrop & Weinstine, P.A., 225 South Sixth Street, Suite 3500, Minneapolis, MN 55402, for MidCountry Bank

Craig R. Baune and Robert M. Lewis, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for the Government.

Marsh J. Halberg and Katherine Running, Halberg Criminal Defense, 7900 Xerxes Avenue South, Suite 1700, Bloomington, MN 55431, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Government's Motion to Dismiss [Doc. 61] MidCountry Bank's Petition [Doc. 55] for a hearing to adjudicate the validity of its alleged interest in $3,744,410 seized from Defendant Matthew Thomas Onofrio. For the reasons below, the Court denies the Government's motion.

**I.    Background**

Under federal law, defendants convicted of certain crimes must forfeit to the United States any property that was used to commit the crime or is a proceed of it. 21 U.S.C.

§ 853(a)(1)–(2). When a criminal indictment seeks a forfeiture, the court must "promptly enter a preliminary order of forfeiture . . . . without regard to any third party's interest in the property." Fed. R. Crim. P. 32.2(b)(A). Then the Government "must publish notice of the order and send notice to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture." Fed. R. Crim. P. 32.2(b)(6)(A); *see also United States v. Erpenbeck*, 682 F.3d 472, 475–77 (6th Cir. 2012).

Third parties have 30 days from the time of notice to "petition the court for a hearing to adjudicate the validity of his alleged interest in the property." 21 U.S.C. § 853(n)(2). "If no third party files a timely petition" and "the court finds that the defendant . . . had an interest in the property that is forfeitable," the "preliminary order becomes the final order of forfeiture," and the United States gets clear title. Fed. R. Crim. P. 32.2(c)(2); 21 U.S.C. § 853(n)(7). But if a third party files a petition, the court must conduct an "ancillary proceeding" that more or less operates as its own civil matter, with civil discovery and motions practice. Fed. R. Crim. P. 32.2(c)(1). This ancillary proceeding is "the only avenue by which a third-party claimant may seek to assert an interest in property that has been included in an indictment alleging that the property is subject to forfeiture." *United States v. Puig*, 419 F.3d 700, 703 (8th Cir. 2005) (citing § 853(k)).

After Mr. Onofrio defrauded MidCountry and others of millions of dollars, MidCountry worked with the FBI to investigate. (Doc. 55 ¶ 110.) The investigation led to an indictment, which alleged three counts of bank fraud, 18 U.S.C. § 1344, and focused on MidCountry as the victim. (Doc. 1 at 3.) The indictment also sought the forfeiture of more

than $35 million in Mr. Onofrio's Premier Bank of Rochester account as proceeds of the fraud. (*Id.* at 4.)

Mr. Onofrio pleaded guilty, and on August 16, 2023, the Court issued a Preliminary Order of Forfeiture [Doc. 30]. The Preliminary Order stated that it would become final as to Mr. Onofrio at the time of sentencing and as to third parties "[f]ollowing the Court's disposition of all petitions . . . or, if no petitions are filed, following the expiration of the time period specified within which to file such petitions." (Doc. 30 ¶¶ 5–6.)

For at least 30 days starting on August 22, 2023, the Government published notice of the Preliminary Order on www.forfeiture.gov. (Doc. 31.) But the Government did not give any direct notice to MidCountry. So, "having apparently not occupied [its] free time by browsing www.forfeiture.gov," *Erpenbeck*, 682 F.3d at 475, MidCountry did not learn of the Preliminary Order until almost a year later—on August 17, 2024. (Doc. 55 ¶¶ 115–16.) MidCountry immediately asked the Government to extend the deadline, but on September 12, the Government declined. (Doc. 50 ¶ 10.) So on October 2, MidCountry moved the Court for an extension, arguing that the Government failed to give proper notice. (Doc. 48 at 2.)

The Government opposed the motion. (Doc. 52.) It did not claim that it gave proper notice; it just argued that "MidCountry [could] simply file its petition" without preauthorization because "Onofrio [had] not been sentenced and no Final Order of Forfeiture [had] been issued." (Doc. 52 at 1.) In the Government's view, the proper avenue to address the timeliness question would be a motion to dismiss the petition once it was filed. (*Id.* at 9.)

The Court agreed that there was nothing stopping MidCountry from filing a petition, so the Court denied MidCountry's motion without prejudice on October 23. (Doc. 54.) The Court noted that MidCountry could make its notice argument in the ancillary proceeding if the Government moved to dismiss the petition because "if MidCountry is correct that the Government failed to provide proper notice under Rule 32.2(b)(6), the thirty-day clock has not started ticking and the Preliminary Order 'remains preliminary as to third parties.'" (Doc. 54 at 5 (quoting Fed. R. Crim. P. 32.2(b)(4)(A)).) Because the Court did not decide at that point whether the 30-day clock had started, the Court neither set a deadline nor issued a final order of forfeiture. Similarly, the Government neither told MidCountry that a petition filed by a future date would be timely nor moved for a final order.

MidCountry filed a petition on December 6, and the Government moved to dismiss it on December 30. (Docs. 55, 61.) After oral argument, the Court denied the Government's motion from the bench. (Doc. 69.) The Court now explains its reasons for doing so.

**II.    Analysis**

"'[F]orfeitures are not favored' in the law," and "forfeiture statutes are strictly construed against the government." *United States v. Real Props. Located at 7215 Longboat Drive*, 750 F.3d 968, 974 (8th Cir. 2014) (citations omitted). The "burden on the government to adhere to the procedural rules" is heavy, and "strict compliance with the letter of the law" is required. *Id.* (quoting *United States v. $493,850.00 in U.S. Currency*, 518 F.2d 1538, 1547 (11th Cir. 1987)).

By statute, the Government can simply "publish notice of [a preliminary] order and of its intent to dispose of the property" online; it does not need to "provide direct written notice" unless it wants to do so "as a substitute for published notice as to those persons so notified." 21 U.S.C. § 853(n)(1). But to avoid "serious, likely devastating, constitutional objections," Federal Rule of Criminal Procedure 32.2 raises the bar. *Erpenbeck*, 682 F.3d at 476–77.

In 2009, Rule 32.2 added several provisions to "codif[y] and restate[] prevailing due process requirements governing adequate notice." *Id.* at 477 (citation omitted). The rule now mandates direct notice to "any person who reasonably appears to be a potential claimant with standing to contest the forfeiture." Fed. R. Crim. P. 32.2(b)(6)(A). It requires the notice to include three details: a "descri[ption] [of] the forfeited property," "the times under the applicable statute when a petition contesting the forfeiture must be filed," and "the name and contact information for the government attorney to be served with the petition." Fed. R. Crim. P. 32.2(b)(6)(B). And it specifies the means of sending notice, allowing it to "be sent in accordance with Supplemental Rules G(4)(b)(iii)–(v) of the Federal Rules of Civil Procedure." Fed. R. Crim. P. 32.2(b)(6)(D). As relevant here, Rule G(4)(b)(v) says, "A potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice."

The Government does not deny that it failed to give direct notice. It just argues that MidCountry had actual notice by August 17 and still did not file a petition until 44 days

- 5 -

after the Court's October 23 order. (Doc. 62 at 7–10.) In support, the Government relies on *Puig*, 419 F.3d at 701–04.

In *Puig*, the appellant waited to contest a forfeiture until after the district court entered the final order, then he moved for relief from the judgment on grounds of excusable neglect under Federal Rule of Civil Procedure 60(b)(1), arguing that his delay should be excused for lack of direct notice. 419 F.3d at 701-02. The United States Court of Appeals for the Eighth Circuit assumed that he was entitled to direct notice but nonetheless held that his neglect was inexcusable because he did not "alert the court of his claimed right to the property" by "petition, or any other filing," until July 7. *Id.* at 703–04. At that point, "well over 30 days" had passed since May 13, when he received a letter from the Government that "specifically told him of his right to file a petition for an ancillary proceeding." *Id.* at 704. And even more time had passed since March 12, when his attorney first "wrote a letter to the government asserting his rights to the property," and March 30, when his attorney received the final order. *Id.* at 703–04.

The Court finds *Puig* distinguishable for three reasons. First, MidCountry does not request relief from a judgment on grounds of excusable neglect. The Court has yet to enter a final order of forfeiture. So the basic question is not whether MidCountry has a valid excuse under Civil Rule 60(b)(1); it is whether the Government provided the notice required by Criminal Rule 32.2(b)(6). In *Puig*, the focus was the appellant's behavior; here, the Government's compliance with Rule 32.2 is the focal point.

Second, the Government never sent a letter—or any communication, for that matter—notifying MidCountry that it had a right to contest the forfeiture by a future date.

While the Government conceded that there was nothing stopping MidCountry from petitioning, it maintained that any petition would be untimely. In other words, the Government only notified MidCountry of an *expired* right, not a ripe one. Unlike the appellant in *Puig*, MidCountry had no real opportunity to contest the forfeiture.

And third, *Puig* was decided before the 2009 amendment to Rule 32.2. Though the *Puig* court assumed that the appellant was entitled to direct notice, it did not have a chance to grapple with the specific details that Rule 32.2 notice now requires. And though it applied an actual notice exception, it did so without looking to Rule G(4)(b)(v)—the actual notice exception that Rule 32.2 now incorporates by reference.

More apposite is *Longboat Drive*, where the Eighth Circuit construed Rule G(4)(b)(v). 750 F.3d at 974–75. There, a district court struck as untimely two claimants' challenges to a civil forfeiture. *Id.* at 969. The Eighth Circuit reversed, concluding that the clock never started running because the Government failed to directly notify the claimants. *Id.* at 974. The Government argued that they had actual notice, as shown by an email where an attorney told the Government that he "may" be representing them, but the Eighth Circuit disagreed. *Id.* Looking to Rule G(4)(b)(v), the court held that "'actual notice' must include, at a minimum, actual knowledge of the deadline to file a claim"—a "construction [that] avoids constitutional deficiencies." *Id.* at 974–75 (citing *Glasgow v. U.S. Drug Enf't Admin.*, 12 F.3d 795, 798 (8th Cir. 1993)). Then it found that the claimants lacked actual notice because the email did not show that they "actually knew the deadlines to file their claims." *Id.* at 975.

Here, too, MidCountry lacked actual notice because it never knew of a future deadline by which it could file a timely claim. True, *Longboat Drive* dealt with a civil forfeiture, and the content requirements for criminal forfeiture notices are slightly different—civil notices need to set "a deadline for filing a claim," while criminal notices must "state the times under the applicable statute when a petition contesting the forfeiture must be filed." *Compare* Fed. R. Civ. P., Supp. R. G(4)(b)(ii)(B), *with* Fed. R. Crim. P. 32.2(b)(6)(B). But Criminal Rule 32.2(b)(6)(D) expressly incorporates Civil Rule G(4)(b)(v) and thereby the case law construing it. And in any event, the constitutional minimum is the same for both civil and criminal forfeitures: "Due process require[s] that . . . notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Glasgow*, 12 F.3d at 798 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)). MidCountry never received notice and an opportunity to petition; it was only told of a deadline that had passed. This retrospective notice was inadequate.

Had the Government—or even the Court—ever told MidCountry that a petition filed within 30 days would be timely, the Court's conclusion might be different. But MidCountry never received such notice, so the Court finds that the clock never started ticking and MidCountry's petition is timely.

Two final matters. First, even if MidCountry had actual notice on September 12 (when the Government declined to extend the deadline) or October 23 (when the Court denied MidCountry's motion), the Court would find that MidCountry petitioned on time.

- 8 -

A document is a "petition" if it is "signed . . . under penalty of perjury" and "set[s] forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, any additional facts supporting the petitioner's claim, and the relief sought." 21 U.S.C. § 853(n)(3). On October 2, Steve Meads—MidCountry's President and Chief Executive Officer—filed a declaration with these details. (Doc. 49.) This declaration may be treated as a timely petition, and MidCountry's December 6 filing may be treated as an amendment. *Cf. Puig*, 419 F.3d at 704 (noting the appellant failed to file "a petition, *or any other filing* in district court asserting a right to the property" within 30 days of actual notice (emphasis added)); *United States v. Swartz Fam. Tr.*, 67 F.4th 505, 520 (2d Cir. 2023) ("[I]n limited circumstances, it may be appropriate to permit the petitioner to amend its petition outside the 30-day window.").

Second, even if MidCountry had actual notice when it discovered the Preliminary Order on August 17, the Court would equitably toll the deadline to October 12—30 days after the Government declined MidCountry's extension request. "The 30-day deadline is strict but not always fatal. It is intended to promote finality for the Government because 'if no third party files a petition within the prescribed time (or no petitioner prevails), the Government emerges with clear title to the forfeited property.'" *Id.* at 519 (cleaned up) (citation omitted). Equitable tolling would not undermine this purpose. The Government would still lack clear title even if the ancillary proceeding were closed because the

Preliminary Order will not be final as to Mr. Onofrio until he is sentenced. (Doc. 30 ¶ 5.)[1] Finally, the Court does not believe that MidCountry should be penalized for the delay from asking the Government for an extension. The Court does not wish to discourage parties from resolving timing issues on their own.

### III.   Order

Based upon the foregoing, and all the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The Government's Motion to Dismiss [Doc. 61] is **DENIED**; and

2. The parties shall meet and confer on a schedule for the ancillary proceedings and report to the Court promptly.

Dated:  February 11, 2025                                        s/ Susan Richard Nelson
                                                                 SUSAN RICHARD NELSON
                                                                 United States District Judge

---

[1] Rule 32.2(b)(4)(A) says that a "preliminary forfeiture order" may "become[] final as to the defendant" before sentencing "if the defendant consents." And in his plea agreement, Mr. Onofrio "agree[d] to forfeit" the Premier Bank account funds. (Doc. 27 ¶ 12.) But the Government did not move the Court for a final forfeiture order as to Mr. Onofrio after he pleaded guilty. Rather, it filed a proposed order—which the Court adopted—stating that the Preliminary Order would "become final as to the defendant at the time of sentencing." (Doc. 29 ¶ 5; Doc. 30 ¶ 5.) And it has maintained throughout the proceedings that "no Final Order of Forfeiture has been issued." (Doc. 52 at 1.)